**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **G&G CLOSED CIRCUIT EVENTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7162** |
| **LARAS A&E LLC, ET AL.** | **SECTION: "P" (5)** |

<u>**ORDER AND REASONS**</u>

      Before the Court is the Motion for Default Judgment filed by Plaintiff, G&G Closed Circuit Events, LLC ("G&G"), as to Gabriela Roadas and Laras A&E LLC ("Laras").[1]  The motion is unopposed.  For the reasons that follow, **IT IS ORDERED** that the motion is **GRANTED**.

## I.     BACKGROUND

      G&G acquires the television rights to live events and distributes closed circuit pay-per-view broadcasts of those events to individuals and commercial entities via sublicensing agreements.[2]  One such event, a championship boxing match between Gervonta Davis and Ryan Garcia and the preceding undercard bouts,[3] occurred on April 22, 2023 (the "Program").[4]  G&G acquired the exclusive nationwide right to distribute the broadcast of the Program.[5]  To prevent the general public's access to the broadcast signal, the broadcast "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal to G&G's lawful sub-licensees."[6]

      G&G alleges that Laras, doing business as Eclipse Sports Bar ("Eclipse"), accessed the closed-circuit broadcast of the Program without sublicensing the Program from G&G, and showed

---

[1] R. Doc. 23.
[2] *See* R. Doc. 1 at ¶¶ 7, 10, 22.
[3] *See* R. Doc. 23-13.
[4] *See* R. Doc. 1 at ¶ 21.
[5] *See* R. Doc. 23-6.
[6] R. Doc. 1 at ¶ 10.

the Program on its televisions.[7]  An investigator working for G&G attested that he visited Eclipse

on the night of the Program and observed that five televisions were playing one of the Program's

undercard bouts, which were subject to the same exclusive distribution license held by G&G.[8]

On December 5, 2023, G&G filed suit in this Court, bringing two claims: (1) violation of

47 U.S.C. § 605 and 18 U.S.C. § 2511 in conjunction with § 2520; and (2) violation of 47 U.S.C.

§ 553.[9]  G&G named as defendants Laras and its two members, Gabriela Roadas and Edwin

Galdimir Bermudez.[10]  On April 18, 2024, summons was served upon Gabriela Roadas's brother

at their shared residence.[11]  As discussed below, service upon Roadas satisfies service upon

Laras.[12]  Bermudez has not been served, and the claims against him have been dismissed.[13]  Neither

Laras nor Roadas has responded to the complaint or participated in this litigation, and, on August

21, 2024, the Clerk of Court entered default against them.[14]  G&G moved for default judgment

against Laras and Roadas on April 1, 2025.[15]

For purposes of this Order, "Defendants" shall include only Laras and Roadas, unless noted

otherwise.

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default

judgment.  There is a three-step process for entering a default judgment: (1) a defendant's default;

---

[7] R. Doc. 1 at ¶ 11.
[8] R. Doc. 23-8.
[9] R. Doc. 1.
[10] *See id.*
[11] *See* R. Doc. 14-1 at 2.
[12] G&G submits an executed summons indicating that an individual named Anna Laras was served on behalf of Laras A&E LLC as its owner, but Anna Laras does not appear on the screenshot of the Louisiana Secretary of State's website indicating the LLC's members, and G&G's motion for default judgment does not explain Anna Laras's involvement with the entity.  *Compare* R. Doc. 14 (summons returned executed as to Laras A&E LLC) *with* R. Doc. R. Doc. 23-11 (listing Edwin Galdimir Bermudez and Gabriela Roadas as Laras A&E LLC's manager and member, respectively).
[13] R. Doc. 21.
[14] R. Doc. 19.
[15] R. Doc. 23.

(2) the clerk's entry of default; and (3) a plaintiff's application for default judgment.[16] A defendant defaults when it has been properly served but fails to respond to the complaint within the time required by the Federal Rules of Civil Procedure.[17] The clerk of court enters a party's default when it is established by affidavit or other means.[18] Only then may a defendant request a judgment based on such default.[19]

## III. LAW AND ANALYSIS

The Court has subject matter jurisdiction over this matter pursuant to federal question jurisdiction, 28 U.S.C. § 1331.[20] Roadas—and, by extension, Laras—was properly served via her brother at their residential address, providing this Court with personal jurisdiction.[21] Because Roadas and Laras failed to respond to the complaint after being served, entry of default was appropriate.[22] All that remains is to determine whether default judgment is appropriate.

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[23] "The Fifth Circuit has 'adopted a policy in favor of resolving cases on their merits and against the use of default judgments,' although this policy is 'counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . within the domain of the trial judge's discretion.'"[24]

---

[16] *See J&J Sports Prods. v. Dinette, L.L.C.*, No. 18-04405, 2019 WL 13537650, at *1 (E.D. La. Oct. 11, 2019) (citing *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)).

[17] *See Brown*, 84 F.3d at 141.

[18] *See id.* (citing FED. R. CIV. P. 55(a)).

[19] *Id.*

[20] *See Dinette*, No. 18-04405, 2019 WL 13537650, at *1 (E.D. La. Oct. 11, 2019).

[21] *See* R. Docs. 14-1 & 23-11. An LLC's citizenship is determined by the citizenship of its members, and Roadas is a member of Laras. *See Acadian Diagnostic Laboratories, L.L.C. v. Quality Toxicology, L.L.C.*, 965 F.3d 404, 408 n.1 (5th Cir. 2020); *see also* R. Doc. 23-11. "Serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k)(1)(A).

[22] *See Brown*, 84 F.3d at 141 (citing FED. R. CIV. P. 55(a)); *see also* R. Doc. 17-2.

[23] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

[24] *See Joe Hand Promotions, Inc. v. BH Lounge of DFW, LLC*, No. 4:24-cv-00409-O, 2025 WL 361818, at *2 (N.D. Tex. Jan. 14, 2025), *R. & R. adopted*, 2025 WL 360907 (N.D. Tex. Jan. 31, 2025) (quoting *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014)).

Courts apply a three-step analysis to determine if default judgment is appropriate. First, courts must determine if default judgment is procedurally warranted.[25] That question involves considering a set of factors the Fifth Circuit laid out in *Lindsey v. Prive Corporation*, asking whether: (1) material issues of fact remain; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the court would set aside the default on the defendant's motion.[26]

If default judgment is procedurally warranted, the next question is whether the plaintiff's pleadings substantively establish a sufficient basis for default judgment.[27] A defendant's default amounts to an admission of any well-pleaded facts, and while the defendant cannot dispute those facts on appeal, a court need not accept an erroneous conclusion of law.[28]

Finally, the court must determine the proper form of relief.[29] Although well-pleaded allegations are accepted as true, this rule does not apply to the amount of damages.[30]

### A. Default judgment is procedurally warranted.

The *Lindsey* factors indicate default judgment is appropriate. G&G's service provider attempted to serve Bermudez, Laras's registered agent and managing member, to no avail.[31] But Roadas was properly served,[32] and, under Louisiana law, service upon Roadas, as a member of

---

[25] *See J&J Sports Prods., Inc. v. Onyx Ultimate Bar and Grill LLC*, No. 17-00589-BAJ-EWD, 2018 WL 344964, at *1 (M.D. La. Jan. 9, 2018).

[26] *See* 161 F.3d 886, 893 (5th Cir. 1998); *see also BH Lounge of DFW*, 2025 WL 361818, at *2.

[27] *See Joe Hand Promotions*, 2025 WL 361818, at *2 (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

[28] *Id.* (quoting *Nishimatsu*, 515 F.2d at 1206).

[29] *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *United States v. 1998 Freightliner Vin # : 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008)).

[30] *See Joe Hand Promotions*, 2025 WL 361818, at *2.

[31] R. Doc. 15; *see also* R. Doc. 23-11.

[32] *See J&J Sports Prods., Inc. v. El Rancho Sports Bar & Grill, LLC*, No. 17-1435, 2018 WL 3550843, at *2 (E.D. La. July 24, 2018) (noting that service was proper when summons was left with defendant's wife at their residence).

Laras, satisfies service upon Laras.[33]  Roadas and Laras failed to file an answer or submit evidence showing the failure to file an answer was the result of "good faith mistake or excusable neglect."[34] Moreover, their failure to participate in this action after being served approximately eight months ago means there are no facts in dispute, and any harshness of a default judgment is mitigated.[35]

With the first five elements of the *Lindsey* analysis clearly satisfied, nothing indicates that the Court would be obliged to set aside the default judgment.[36]  Thus, having satisfied all the *Lindsey* elements, default judgment is procedurally proper.

**B. There is sufficient uncontested evidence to support default judgment.**

G&G's motion only pursues default judgment for one of its claims, violation of 47 U.S.C. § 553.[37]  47 U.S.C. § 553(a)(1) provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  The statute authorizes a plaintiff "aggrieved by any violation of" Section 553(a)(1) to bring a civil action in federal district court.[38]  The Fifth Circuit applies the same standard as Rule 8—"a short and plain statement of the claim showing that the pleader is entitled to relief"—to determine whether a plaintiff's factual allegations are sufficient to support a default judgment.[39]

---

[33] *See* LA. CODE CIV. P. ANN. art. 1266(B)(1) ("[I]f the person attempting to make service certifies that he is unable, after due diligence, to serve the designated agent, service of the citation or other process may be made by . . . Personal service on any manager if the management of the limited liability company is vested in one or more managers or if management is not so vested in managers, then on any member.").

[34] *See Lindsey*, 161 F.3d at 893.

[35] *See Dinette*, 2019 WL 13537650, at *2.

[36] *See Joe Hand Promotions*, 2025 WL 361818, at *3.

[37] *See* R. Doc. 23-1; *see also Onyx*, 2018 WL 344964, at *2-3 (noting that, under similar allegations, Fifth Circuit has found that § 605 did not apply as it only relates to radio communications, not those by wire) (citing *J&J Sports Prods., Inc. v. Mandell Fam. Ventures, L.L.C.*, 751 F.3d 346, 351 (5th Cir. 2014)).  G&G makes no argument in favor of its Wire Tap Act claims, 18 U.S.C. § 2511, in conjunction with § 2520.

[38] 47 U.S.C. § 553(c)(1).

[39] *See Joe Hand Prods.*, 2025 WL 361818, at *4 (citing *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also* FED. R. CIV. P. 8 (requiring a "short and plain statement" of the claim).

G&G admits that it does not know exactly how Defendants intercepted the Program's signal and broadcast it on televisions inside Eclipse.[40]  But G&G's investigator attested that the Program was played on multiple televisions inside Eclipse,[41] G&G owned exclusive rights to sublicense the Program, and G&G submits uncontroverted evidence that Laras did not pay the required $1,700 fee to broadcast the Program.[42]  Where, as here, a plaintiff cannot identify the particular method used to access its communication without authorization, district courts have nonetheless awarded default judgments.[43]  Thus, there is sufficient evidence to conclude that Defendants violated Section 553.

### C.  There is sufficient evidence for the Court to calculate damages.

"A defaulting defendant 'concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages.'"[44]  "A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated 'by detailed affidavits establishing the necessary facts.'"[45]

   *a.  Statutory damages.*

Section 553 provides two ways to calculate damages: (1) the aggrieved party may recover the actual damages suffered as a result of the violation as well as the defendant's ill-gotten gains attributable to the violation; or (2) the aggrieved party may recover statutory damages between $250 and $10,000, in the court's discretion.[46]  G&G seeks statutory damages.[47]

---

[40] *See* R. Doc. 1 at ¶ 11 (listing methods by which Laras may have obtained the signal).
[41] *See* R. Doc. 23-8.
[42] R. Doc. 23-5 at ¶ 7.
[43] *See Dinette*, 2019 WL 13537650, at *2 n.29 (collecting cases).
[44] *J&J Sports Prods., Inc. v. Tiger Paw Daquiris & Grill*, No. 14-268-BAJ-RLB, 2015 WL 1800619, at *5 (M.D. La. Apr. 16, 2025) (quoting *Ins. Co. of the West v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011)).
[45] *Id.* (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).
[46] *See* 47 U.S.C. § 553(c)(3)(A).
[47] *See* R. Doc. 23-1 at 3-4 ("'After the fact' payment of the cost to lawfully receive the transmission by a person who unlawfully intercepted the transmission is not a deterrent to those who disrespect the law and the rights of others.").

Courts have employed a variety of formulas to calculate a "just" amount of statutory damages. These methods include calculating damages based on the number of patrons in the establishment at the time of the violation, imposing damages equal to the sublicensing fee that the establishment was required to pay, or applying a multiple of the sublicensing fee to better deter violations.[48] The goal of any such statutory damages formula is "to balance the financial burden a significant damages award will place on the defendant with the [plaintiffs'] financial harm, the policy and enforcement considerations behind preventing piracy, and the importance of deterrence."[49]

Following the practice of other district courts in this Circuit considering similar cases, this Court finds that a statutory damages award of twice the amount of the sublicensing fee is justified.[50] G&G has established that Laras would have paid $1,700 to sublicense the broadcast,[51] based on its investigator's estimate that Eclipse's maximum capacity was 60 people.[52] Thus, G&G is awarded $3,400 in statutory damages.

### b. *Willful violation damages.*

In addition to any actual or statutory damages, Section 553 authorizes courts to impose a maximum of $50,000 in so-called "enhanced damages" upon finding that "the violation was committed willfully and for purposes of commercial advantage or private financial gain."[53] Even when there is no direct evidence that a defendant acted "willfully and for purposes of commercial

---

[48] *See Tiger Paw*, 2015 WL 1800619, at *5 (collecting cases).
[49] *Id.* (citing *Joe Hand Promotions, Inc. v. Trenchard*, No. 3:12cv1099 (SRU), 2014 WL 854537 (D. Conn. Mar. 3, 2014)).
[50] *See, e.g., id.* at *5 (awarding statutory damages twice the sublicensing fee) (citing *J&J Sports Prods., Inc. v. Wine Bistro LLC*, No. 13-6369, slip op. at 12 (E.D. La. July 30, 2014)); *J&J Sports Prods., Inc. v. KCK Holdings*, No. 14-00269-BAJ-SCR, 2015 WL 4656714, at *5 (M.D. La. Aug. 5, 2015) (same); *Dinette*, 2019 WL 13537650, at *3 (same).
[51] R. Doc. 23-7.
[52] R. Doc. 23-8 at 2.
[53] 47 U.S.C. § 553(c)(3)(B).

advantage or private financial gain," courts have found willfulness from the allegation that a closed-circuit television broadcast could not have been accidentally, innocently, or mistakenly intercepted.[54]  The affidavit of G&G's president, Nicholas Gagliardi, that G&G's "programming is *not* and *cannot* be mistakenly, innocently or accidentally intercepted," is, therefore, sufficient evidence to find willfulness, and Eclipse undoubtedly obtained a financial advantage by avoiding the sublicense fee.[55]

> Courts consider five factors when determining the amount of enhanced damages:
>
> (1) Whether the defendant engaged in repeated violations over an extended period of time;
> (2) Whether the defendant realized substantial unlawful monetary gains;
> (3) Whether the defendant advertised the broadcast;
> (4) Whether an admission fee or food and drink premium was charged; and
> (5) Whether the plaintiff suffered significant actual damages.[56]

There is no evidence of repeated violations, and G&G's investigator was not charged a cover fee to enter Eclipse.[57]  Nor is there evidence that Eclipse charged a food or drink premium or that Eclipse advertised that it would show the Program, and the investigator only observed one or two other customers inside the bar—certainly too few for Eclipse to "realize[] substantial unlawful monetary gains."[58]  G&G describes its efforts to prevent and detect violations of its exclusive distribution rights,[59] but submits no evidence of actual damages other than the $1,700 sublicense fee it should have received.  Under similar circumstances, courts typically award enhanced damages of two-to-three times the amount of statutory damages.[60]  Accordingly, the Court finds that $6,800 is an appropriate enhanced damages award.

---

[54] *Tiger Paw*, 2015 WL 1800619, at *5 (citing *Wine Bistro LLC*, No. 13-6369, slip op. at 13 (E.D. La. July 30, 2014)).
[55] *See* R. Doc. 23-5 at 3; *see also Tiger Paw*, 2015 WL 1800619, at *6.
[56] *Onyx*, 2018 WL 344964, at *4 (citing *KCK Holdings*, 2015 WL 4656714, at *5).
[57] R. Doc. 23-8.
[58] *See id.*
[59] R. Doc. 23-1 at 4.
[60] *See, e.g.*, *Tiger Paw*, 2015 WL 1800619, at *6 (awarding enhanced damages equivalent to three times the statutory damages award, which was twice the sublicensing fee) (citing *G & G Closed Circuit Events LLC v. Rivals Sports Grill LLC*, No. 6:12-3052, 2014 WL 198159, at *4 (W.D. La. Jan. 14, 2014) (same)); *Dinette*, 2019 WL 13537650, at *3

       *c.  Litigation costs and attorney's fees.*

G&G also seeks to recover attorney's fees and litigation costs.[61]  Section 553 authorizes such an award.[62]

The Court awards G&G litigation costs and attorney's fees and directs G&G to submit appropriate documentation conforming with this Court's Local Rules.[63]  The amount of reasonable litigation costs and attorney's fees will be determined by the Magistrate Judge.

**D. Roadas is personally liable.**

Louisiana law provides an exception to the general rule that a member of an LLC is immune from liability for the LLC's debts when that member commits a "negligent or wrongful act" against a plaintiff.[64]  In failing to respond to G&G's well-pleaded complaint and well-founded motion for default judgment, Roadas is deemed to have admitted that she was responsible for the tortious act of intercepting the broadcast of the Program and displaying it at Eclipse on April 22, 2023.[65]  Thus, Roadas is personally liable for the full damages award and any other costs or fees imposed by this Court.

**IV.    CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Motion for Default Judgment (R. Doc. 23) is **GRANTED**.

---

(awarding enhanced damages of approximately 1.5 times statutory damages award, which was twice the sublicensing fee).
[61] *See* R. Doc. 23-1 at 4.
[62] 47 U.S.C. § 553(c)(2)(C).
[63] *See* L.R. 54.2 & 54.3.
[64] La. Stat. Ann. § 12:1320(D).
[65] *See, e.g.*, *Tiger Paw*, 2015 WL 1800619, at *7 (holding that officer and director of corporation that served as sole member of LLC was personally liable for tortious act of intercepting broadcast); *KCK Holdings*, 2015 WL 4656714, at *7 (holding an individual, presumably the LLC's member, liable for LLC's illicit interception of broadcast); *see also Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 900-02 (finding that Louisiana law's "negligent or wrongful" exception to LLC members' immunity, La. Stat. Ann. § 12:1320(D), encompasses torts committed against a cognizable victim).

**IT IS FURTHER ORDERED** that Defendants, Gabriela Roadas and Laras A&E LLC, shall pay Plaintiff, G&G Closed Circuit Events, LLC, $3,400 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), and $6,800 in enhanced damages, pursuant to 47 U.S.C. § 553(c)(3)(B), for a total of $10,200. A separate judgment in favor of Plaintiff shall be issued in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Plaintiff is awarded litigation costs and attorney's fees pursuant to 47 U.S.C. § 553(c)(2)(C) and shall file the documentation required by Local Rules 54.2 and 54.3 within thirty-five (35) days of receiving notice of entry of the Judgment. The Magistrate Judge will determine the reasonableness of Plaintiff's costs and fees.

**IT IS FURTHER ORDERED** that all amounts awarded herein shall be recoverable from Defendants, jointly and severally, including interest from the date of the Judgment pursuant to 28 U.S.C. § 1961.

New Orleans, Louisiana, this 13th day of May 2025.

**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**